COMMONWEALTH *vs.* GEORGE RATCLIFFE.

Bristol.    Oct. 26. — Nov. 23, 1880.    AMES & ENDICOTT, JJ., absent.

If there is evidence that several persons are together for a common illegal enterprise, the declarations of one of them are admissible, at the trial of an indictment against another of them, as part of the *res gestœ*.

LORD, J.    The defendant was indicted under the St. of 1876, c. 85, § 7, for owning, possessing, keeping and training a certain bird, to wit, a cock, "with the intent then and there that said bird should be engaged in an exhibition of fighting." There was another person named Barlow who was indicted for the same offence by another indictment, which by consent was tried at

---

* See St. 1881, c. 276.

the same time and before the same jury, the evidence in the two cases being precisely the same. The only question presented for our consideration is, whether certain declarations, not made by the defendant or Barlow, but made in their presence, were properly admitted in evidence.

Ordinarily, declarations made in the presence of a party in derogation of his interests or rights are competent evidence, if such rights or interests are involved in the issue on trial, upon the ground that men will ordinarily assert their rights when any attack is made upon them, and especially that men will, if innocent, assert their innocence when criminality is charged against them. The admission of such evidence is subject to qualification and exception, and the question whether the circumstances under which the declarations were made, the time and place when and where made, the presence in which made, render them competent, is ordinarily one of law, to be passed upon by the presiding judge. Nothing is more clear than that declarations made against the interests of a party in the course of judicial proceedings are incompetent, as well for the reason that the party is not called upon to make reply to such declarations, as that the proprieties of the place forbid his interruption or interference by denial. Nor is this limitation confined to judicial proceedings. It has been repeatedly held that an individual under arrest and in charge of an officer is not called upon to reply to charges made against him, or to declarations made against his interests, while thus in custody.

Upon looking into the case, to see what the declarations were, under what circumstances made, and whether in any view they were admissible in evidence as declarations made against the interest of the defendant, or otherwise, we find that certain police officers " went to the house and saloon of one Barlow," the other party on trial. The officers all arrived at about the same time, and " went into the kitchen." Both the defendants were present in the room, and in all, including them, " were eight or nine men." When the officers entered the room, those who were in it attempted to escape, but were prevented. In the room, the officers found a game cock with one steel gaff on, some feathers on the floor, and the bird's wings trimmed. It appeared also that this defendant owned the game-cock, and

that when the officers entered the room, one of the parties in the room was either putting on to or taking off of the game-cock another steel gaff; and the declarations, which were admitted against the defendant's exception, were from one person, who said, "You come too soon;" and the language of one Gunning, "Let them go to hell; they can't find anything and can't do anything; if they had been five minutes sooner, they might have seen something."

The presiding justice did not admit this language as declarations made in the presence of a person charged, which he was called upon to answer because made in derogation of his rights; but admitted them expressly upon the ground that they were part of the *res gestœ*, and that there was evidence from which the jury could find that the company was there engaged in a common illegal enterprise.

The question then presents itself, whether what was said and done upon the irruption of the officers upon the company was competent. We are of opinion that it was, and we can see no difference in principle between the admission of evidence that the occupants of the room attempted to run away upon the entrance of the officers, and evidence of other conduct and ejaculations when they were thus broken in upon. All the discoveries which the officers made, all the conduct of the parties found there, their ejaculations and their taunts, the game-cock with his trimmed wings and steel gaff, were all competent evidence, not to prove that Ratcliffe owned the game-cock, but to show the character of that assemblage, and as tending to show whether or not the intent of the owner of the cock was that he " should be engaged in an exhibition of fighting." The evidence was not received as a narration of facts, but as the cries and ejaculations, in their nature acts, of those discovered by the officers of the law engaged in a common purpose of violating the law. The true character and the true purpose of that assemblage could not be determined except by their acts and conduct and declarations respecting the purposes of assembling, and the implements for violating the law which were present. Beyond this tendency to show the character and object of the assembly, such declarations and conduct could have no effect upon the question whether the defendant owned or was training the bird, but only

upon the question whether this was an assemblage for " an exhibition of fighting;" and, for the purposes and in the mode indicated by the presiding judge, they were competent.

*Exceptions overruled.*

*J. W. Cummings*, for the defendant.

*G. Marston*, Attorney General, for the Commonwealth.